[Civ. No. 8716.   Third Dist.   Dec. 22, 1955.]

MACE LUMSDEN, Respondent, v. W. E. ROTH et al., Appellants.

H. D. Jerrett for Appellants.

Hughes, Maul & Fogerty, Geoffrey A. Hughes, George P. Maul and Charles F. Fogerty for Respondent.

VAN DYKE, P. J.—Plaintiff-respondent brought action to recover money alleged to be due for the sale of timber. The cause was tried by the court without a jury and from a judgment in favor of plaintiff defendants have appealed.

The trial court found the following: On July 22, 1953, respondent entered into a written contract with appellant Roth for the sale to him of certain timber standing on respondent's land, marked for cutting and which was by Roth to be cut and removed from the land. The purchase price was $15 per thousand board feet according to the "Scribner Decimal C scale." On October 7th following respondent and Roth executed a second agreement which extended the time given Roth for cutting and removing the timber, but this agreement also provided that payment should be made for all trees taken and also for those left standing on the land "down to an eight inch top." There was also a provision for attorneys' fees if respondent instituted suit to enforce the provisions of either contract. Appellant Roth assigned his rights under the agreements to appellants Sam and Howard Neilsen and by reason of the assignment the assignees became obligated to perform the terms of the agreements. There was cut a total of 197,244 board feet. Appellants paid for 125,360 feet thereof at the contract price and this left unpaid the sum of $1,078.26. Three hundred dollars was a reasonable

amount for attorneys' fees. Judgment was given according to these findings.

Appellants attack the findings that Roth assigned the contracts and that thereby the Neilsens became obligated to respondent. The evidence as to assignment is sufficient. Roth testified that he obtained the contract in order to get a job cutting and bucking the timber after the Neilsens had gone with him to the land and inspected the same and had agreed with him to pay respondent for the timber. He said he would not have taken the contracts unless the Neilsens agreed to this and, as he put it, he "gave" both contracts to the Neilsens. It was also shown that all of the payments to respondent were made directly by the Neilsens; that the Neilsens took all of the timber cut; that it was their scaler who scaled the logs delivered; that the payments they made were made according to his scale, a part of their defense being that according to their scaler's computations they had fully paid respondent. The foregoing is sufficient to uphold the court's findings of an assignment and the further finding that by the assignments the Neilsens became obligated to respondent. While "the mere acceptance of an assignment of rights under a bilateral contract under which a reciprocal burden has been undertaken by the assignor does not impose any duty of affirmative performance upon the assignee personally" yet "the assignee may of course agree to assume the burden as a consideration of the assignment. In determining whether there has been such an assumption by an assignee, the intention of the parties is determined by due consideration of their words, their acts, and the subject matter of the contract." (5 Cal.Jur.2d, "Assignments," § 60.) "[W]here, after the assignment is made, the executory provisions of the contract are fully performed, the benefit inuring solely to the assignee, and where by his actions he holds himself out as personally liable and recognizes the original contract as binding upon him, he is liable to the other party equally with the assignor." (*Robinson* v. *Rispin*, 33 Cal.App. 536, 541 [165 P. 979]; see also *Jones* v. *Allert*, 161 Cal. 234 [118 P. 794]; *Armstrong Co.* v. *Shell Co. of Calif.*, 98 Cal.App. 769, 775-776 [277 P. 887]; *Wilson* v. *Beazley*, 186 Cal. 437, 444 [199 P. 772].)

Appellants contend that the evidence is insufficient to support the findings as to the amount of timber for which they became indebted to respondent at the contract price. The quantity of board feet taken was to be computed by the Scribner Decimal C scale and this was shown to be what was

called a logger's scale, whereby the logs delivered are measured. There was testimony that such a tally was kept by an employee of the Neilsens, but it showed only 125,360 board feet received, which quantity had been paid for at the contract rate. Respondent, however, claimed that this tally was neither complete nor correct and he sought to prove this by testimony of a forester, qualified as a timber cruiser, who went upon the land after the trees had been cut and made what is called a stump cruise. In making this the cruiser marks the point on the land where the butt of the tree struck when the tree was felled, then ascertains the length of that part of the tree that is bucked by measurement from the butt mark to the top cut as shown by the sawdust left on the ground where the cuts were made. He then measures the stump, inside the bark, and by a fixed formula finds the board feet in the trunk. The witness stated that such a cruise would be accurate within 5 per cent either way, that he had done his work carefully and that a total of 197,244 board feet had been cut. This included some trunks not hauled away. His figures exceeded the amount paid for by appellants by 71,844 feet. The court adopted this accounting and gave judgment for the unpaid price as so calculated. Appellants argue that only the logger's scale could be used since the parties had agreed that the amount to be paid for should be fixed by that scale. ■ However, the court was not obliged to accept the accounting given by the use of that scale as testified to by the Neilsens' scaler. The court could consider that he was regularly employed by the Neilsens, that he himself testified that he had not done all of the scaling, and that of all the trees cut a considerable amount in board footage was left on the land and therefore never subjected to the agreed scale. ■ Though the contract fixed the method of scaling the logs, respondent was not bound to accept an erroneous scale whether the error proceeded from mistake or otherwise. He was entitled to prove error and the method he used was, according to the testimony, a reliable method. ■ There was an issue of fact as to the amount of trees cut for which appellants were obligated to pay, and since they are supported by substantial evidence we must accept the trial court's findings. ■ Appellants contend that, whereas the trial court found they had failed to pay for 71,884 board feet of "merchantable timber," there was no evidence that this quantity of timber was in fact merchantable. However, the point is without merit for the reason that the contracts did not specify that

merchantability of timber cut should be a prerequisite to the obligation to pay for cut timber. In fact, the evidence showed that the trees to be cut had all been marked before the cutting began and with some few exceptions the marked trees were felled.

Appellants attack the finding of the trial court that $300, as reasonable attorneys' fees, should be paid by them to respondent. But their argument is based upon a premise which is faulty, that is, that they had paid for all timber they were obligated to pay for and, therefore, there was no necessity for the institution of the present action. The judgment rendered and what we have heretofore said in affirmance thereof dispose of that argument.

█ Appellants contend that their demurrers to the complaint should have been sustained. The argument is based upon the grounds that respondent sued as "Mace Lumsden" and under that name verified his complaint; the contracts, however, named him as "H. M. Lumsden" and he signed the second agreement in that manner. Plaintiff alleged and proved that he was the party to the contracts as seller of the timber. He testified that he was known as Mace Lumsden, also as H. M. Lumsden, and as Howard M. Lumsden. In that state of the record any variation in his name appearing therein could not prejudice appellants.

The judgment appealed from is affirmed.

Peek. J., and Schottky, J., concurred.