453 P.2d 697

PRUDENTIAL FEDERAL SAVINGS AND
LOAN ASSOCIATION, a corporation,
Plaintiff and Appellant,

v.

Wells R. KING et al., Defendants, George W.
Evans and Martha R. Evans, his wife,
Defendants and Respondents.

No. 11316.

Supreme Court of Utah.

April 18, 1969.

Ray G. Martineau, Robert P. Baker,
of Van Cott, Bagley, Cornwall & Mc-
Carthy, Salt Lake City, for appellant.

John G. Marshall, Salt Lake City, for respondents.

CALLISTER, Justice.

Plaintiff commenced this action to foreclose as a mortgage the interests of the defendants under a uniform real estate contract. (Paragraph 16C provided that upon default, the seller may elect to declare the entire remaining balance owing thereunder at once due and payable, to treat said Contract as a note and mortgage, and to proceed immediately to foreclose the same.) The trial court issued a decree of foreclosure but declined to award the plaintiff a deficiency judgment against the defendants, who were assignees of the contract.

On February 1, 1962, Maurer Development Corporation entered into a uniform real estate contract, as seller, with Wells R. King and his wife, as buyers. Thereafter, on November 27, 1963, Maurer Development assigned and conveyed its seller's interest to the plaintiff. Prior to the acquisition of title by plaintiff, the Kings assigned their interest in the real estate contract to the defendants, George W. Evans and his wife, who assigned their interest to James T. Rice and wife and Preston Norton and wife. All of the assignments were executed on similar printed forms with the appropriate blanks completed by the parties.

On appeal, plaintiff contends that the trial court erroneously dismissed its claim for a deficiency judgment, since by virtue of the assignment, the assignee assumed payment of the purchase price as set forth in the real estate contract. Defendants respond that there was no such assumption of the payment of the contract balance because the assignment did not specifically state the words: "the assignee agrees to assume or pay the balance due."

The parties cite Paragraph 3 of the assignment to support their respective positions:

3. That in consideration of the assignors executing and delivering this agreement, the assignees covenant with the assignors as follows:

a. That the assignees will duly keep, observe and perform all of the terms, conditions and provisions of the said agreement that are to be kept, observed and performed by the assignors.

b. That the assignees will save and hold harmless the assignors of and from any and all actions, suits, costs, damages, claims and demands whatsoever arising by reason of an act or omission of the assignees.

■ The parties have placed undue emphasis on Paragraph 3; all of the provisions of the assignment are of significance and should be construed together.

■ In the Assignment of Contract, which was the approved form of the Utah State Securities Commission and Utah

State Realty Association, the assignors assigned all their right, title and interest in the uniform real estate contract to the assignees. The assignment recited that to induce the assignees to pay said sum of money and to *accept* the real estate contract, the assignors represent that they have performed all the conditions therein, that the contract is now in full force and effect and the amount of the current unpaid balance. The assignees covenanted to perform all of the terms, conditions and provisions of the uniform real estate contract that were to be kept, observed and performed by the assignors. The language clearly constitutes an assumption by the assignee to pay the balance due on the real estate contract.

In Radley v. Smith,[1] this court quoted with approval Sec. 164(1), Restatement of Contracts:

> Where a party to a bilateral contract, which is at the time wholly or partially executory on both sides, purports to assign the whole contract, his action is interpreted, in the absence of circumstances showing a contrary intention, as an assignment of the assignor's rights under the contract and a delegation of the performance of the assignor's duties. Subsection (2) provides:

Acceptance by the assignee of such an assignment is interpreted, in the absence of circumstances showing a contrary intention, as both an assent to become an assignee of the assignor's rights and as a promise to the assignor to assume the performance of the assignor's duties.

In Lonas v. Metropolitan Mortgage and Securities Co.,[2] the court observed that where an assignee agrees to pay the balance due on a real estate contract and to observe and perform all the terms, conditions and covenants therein, the promised performance of the assignee will benefit someone other than the assignor, namely, the vendor, and will satisfy the assignor's duty to the vendor; the latter is a creditor beneficiary.[3] The assignee's promise to discharge the assignor's obligation under the contract creates a duty on the part of the assignee to the vendor to perform the promise.[4] As a creditor beneficiary, the vendor may recover judgment against either the assignee or assignor or against each of them as to the purchaser's obligation under the contract.[5]

The assignment in the Lonas Case, as in the instant action, also contained "a save harmless" provision, and the assignees argued that the assignment was a contract of indemnity. The court responded that the

1. 6 Utah 2d 314, 317, 313 P.2d 465 (1957).
2. (Alaska, 1967) 432 P.2d 603, 604–605.
3. Restatement of Contracts, § 133(1), (b).
4. Id., § 136(1) (a).
5. Id., § 141(1).

action was not to enforce the indemnity provision; in addition to the indemnity provision, the assignment provided for the assumption by the assignee of the assignor's obligation to pay the moneys due under the real estate contract. In so doing, the assignees became liable to the vendor of the property for the performance of the promises in that contract. Those were the promises which the vendor sought to enforce in the action; the indemnification provision was not involved.

Based on the foregoing principles, the judgment of the trial court is reversed and remanded for disposition in accordance with this opinion.[6]

CROCKETT, C. J., and HENRIOD and ELLETT, JJ., concur.

TUCKETT, Justice (dissenting):

I dissent. It appears that one of the chief issues before this court is the construction to be placed upon that portion of the assignment of contract set forth in the main opinion. I would construe that language as creating an agreement of indemnity wherein the assignees promise to save harmless the assignors from any claim or demand rising under the contract. While there may be cases supporting the view of the main opinion, it is my impression that the language of the assignments is too vague and uncertain for us to conclude that the assignees intended to assume payment of the purchase price in any event. I would require a more express promise to pay the purchase price on the part of the assignees which would amount to a novation before ordering that the plaintiff is entitled to a deficiency judgment against successive assignees.[1] The promise to pay is not a covenant that runs with the land.[2]

The main opinion relies in part upon Radley v. Smith wherein this court quoted with approval excerpts from the Restatement of Contracts. The opinion does not contain the wording of the contract there involved and I doubt whether we should rely upon that portion of the restatement

6. The issue as to whether plaintiff correctly followed proceedings for foreclosure was not raised on this appeal.

1. Perkins v. Brown, 179 Wash. 597, 38 P.2d 253, 101 A.L.R. 275.

2. Lisenby v. Newton, 120 Cal. 571, 52 P. 813; Bank of America Natl. T. & Sav. Assn. v. McLaughlin, 152 Cal.App.2d Supp. 911, 313 P.2d 220; Fine v. Bradshaw, 138 Cal.App.2d 862, 292 P.2d 537; Kneberg v. H. L. Green Co., Inc., 7 Cir., 89 F.2d 100; Mound Valley Vitrified Brick Co. v. Mound Valley Natural Gas

& Oil Co., C.C., 258 F. 936; East Vedado Corp. v. E. S. Adkins & Co., 157 Md. 416, 146 A. 385.

3. Section 164(1), Restatement of Contracts, quoted in the citation of the main opinion is taken from Chapter 7 of that text. The introductory statement as contained in Section 148 contains the following qualifications: "Negotiable instruments are excluded from the restatement in this chapter * * * because the rules governing them are to some extent different. * * * For a similar rea-

here.[3] It is also noted that the Alaska case cited in the main opinion deals with a suit for specific performance rather than a foreclosure proceeding.

The fact that numerous real estate transactions in this jurisdiction are handled by real estate contracts which are seldom recorded persuades me that assignments of such contracts should be strictly construed.

The plaintiff here as assignee of the original vendor named in the contract elected to proceed under Section 16C of that contract which gave the vendor the option of passing title to the buyer and then proceeding to foreclose the contract in accordance with the laws pertaining to the foreclosure of mortgages. The record is clear that the plaintiff did not comply with that provision of the contract and did not convey title to the buyers. The procedure elected by the plaintiff resulted in the anomalous situation of the plaintiff seeking to foreclose its own lien upon its own property and after· decree, bidding. in the property at the sheriff's sale for a sum far less than the balance due on the purchase price. I do not believe that the courts should aid the plaintiff in dealing with its property in this manner. . I would affirm the lower court.

son the statement of the benefits and burdens attached to successive owners of

property because of a contract in a prior conveyance or lease is. omitted."